UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BROOKVILLE EQUIPMENT CORPORATION, a Pennsylvania corporation, | Case No. 1:19-cv-00387-CWD |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| MOTIVEPOWER, INC., a Delaware corporation, | |
| Defendant. | |

## INTRODUCTION

The Court has before it MotivePower, Inc.'s motion to dismiss, filed pursuant to

Fed. R. Civ. P. 12(b)(6), on the grounds that each of the five claims set forth in

Brookville Equipment Corporation's complaint fail as a matter of law.[1] Brookville, a

Pennsylvania corporation, filed suit in the District of Idaho on October 4, 2019, alleging:

(1) defamation per se; (2) defamation; (3) invasion of privacy by false light; (4)

---

[1] The parties have consented to the jurisdiction of a magistrate judge to hear and decide all matters. (Dkt. 12.)

**MEMORANDUM DECISION AND ORDER - 1**

interference with contract; and (5) interference with prospective economic advantage. (Dkt. 1.) Brookville asserts that MotivePower, Inc. (MPI), a Delaware corporation authorized to conduct business in Idaho and having its principal place of business in Boise, was responsible for publishing a defamatory letter to one or more of Brookville's customers, thereby damaging Brookville's reputation in the locomotive manufacturing industry, and with its long-time customer, Metro-North Railroad.

The parties do not dispute the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as diversity exists between all parties and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. The motion is ripe for review, and will be decided on the record before the Court without a hearing. D. Idaho L. Rule 7.1(d)(1)(B).

## BACKGROUND[2]

Brookville, a Pennsylvania corporation with a principal place of business in Brookville, Pennsylvania, is a diversified manufacturer of customizable, powered rail equipment vehicles for freight rail, mass transit, mining, and tunneling applications. Brookville has more than 20 years of experience providing small fleets (e.g., less than 20) of passenger locomotive and streetcar vehicles to transit agencies around the nation, including Metro-North Railroad, Staten Island Railway, Dallas Area Rapid Transit, the City of Oklahoma City, San Francisco Municipal Transportation Agency, New Orleans Regional Transit Authority, and South Florida Regional Transportation Authority.

---

[2] For purposes of the motion, all allegations in the Complaint are accepted as true.

MEMORANDUM DECISION AND ORDER  - 2

Brookville's major programs are subject to design reviews and rigorous approvals with supporting documentation from its customers and their consultants, as well as from government entities, including the Federal Railroad Administration ("FRA"). Compliance with such regulations is essential to Brookville's reputation in the industry and its ability to market and sell its locomotives to its customers and potential customers. Brookville has established a national reputation as a producer of high-quality rail products across transit industries for both new and rebuilt fleets.

In particular, Brookville has a long history of providing locomotive design and manufacturing services to Metro-North Railroad, ("Metro-North"), a suburban commuter rail service operated by the Metropolitan Transportation Authority, a public authority of the State of New York. Brookville is expected to comply with Metro-North's high standard for its locomotive equipment.

In 2007, Metro-North contracted to purchase twelve BL20GH passenger locomotives that were designed and manufactured by Brookville (the "Locomotives"). The Locomotives were subject to design-review processes by Metro-North. The Locomotives were and are fully compliant with all applicable regulations and specifications, including those related to the design of the fuel tanks. The Locomotives were accepted by, and delivered to, Metro-North between June 3, 2008 and June 14, 2009.

MPI, a Delaware corporation authorized to conduct business in Idaho, is a direct competitor of Brookville. MPI designs, manufactures, and remanufactures diesel-electric locomotives and provides overhaul and testing services on locomotives for customers

**MEMORANDUM DECISION AND ORDER - 3**

throughout the United States. In or about 2017, Metro-North engaged MPI to install a fuel sensor onto the fuel tanks of each of the Locomotives Metro-North had purchased from Brookville. The Locomotives were transferred to MPI's Boise headquarters for this purpose. During MPI's work for Metro-North on the Locomotives, MPI opened the Locomotive's fuel tanks and verified the physical arrangement of the fuel fill piping. This work occurred at MPI's Boise headquarters.

In a letter dated October 13, 2017,[3] and bearing the subject description "Existing Fuel Tank Design Non-Compliance," MPI informed Metro-North that "[i]nspections verified a configuration [of the BL20GH fuel tanks] that MPI deems to be non-compliant to applicable regulations (specifically the fuel fill tubes should cross to opposite sides of the tank to ensure roll-over spill protection). Significant complications to MPI's Production Plan are associated with this discovery…." As a result, MPI informed Metro-North that it would "not certify the Fuel Tank's design as compliant to applicable regulations." MPI stated also that it "will not be able to complete track testing requirements without a formal FRA waiver…." And, MPI informed Metro-North that the issues raised in its letter "require resolution prior to completion of the locomotive" work.

---

[3] Brookville referenced and quoted portions of the letter in its complaint but did not attach a copy. MPI attached a copy of the letter as Exhibit A to the Declaration of Daniel O'Donnell. (Dkt. 9-2, 9-3.) Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, unless the motion is converted to a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss and does not convert the motion into a motion for summary judgment. *Id.* at 453 – 54. Neither party disputes the authenticity of the letter or objects to its consideration.

**MEMORANDUM DECISION AND ORDER  - 4**

To that end, MPI offered to give Metro-North a quote to "design a tank for this locomotive" that was compliant with applicable regulations.

The letter was sent from MPI's Boise headquarters to Metro-North in New York, with copies to individuals at MPI, Metro-North, and to "STV, Inc."[4] Brookville believes also that MPI informed Brookville's other customers, including the South Florida Regional Transit Authority, that Brookville's BL20GH locomotive's fuel tanks were "non-complaint" with federal regulations.

Thereafter, Metro-North informed Brookville on January 2, 2018, that it had been brought to Metro-North's attention that "the fuel tanks supplied by Brookville on [the Locomotives are] non-compliant with a multitude of regulations." Metro-North asserted that Brookville "is obligated to correct this non-compliance" under the warranty provisions of its contract and, therefore, requested that Brookville provide Metro-North with a corrective action plan by January 19, 2018. Metro-North informed Brookville that MPI had determined that the fuel fill piping on the Locomotives' fuel tanks were not built in compliance with federal regulations and provided Brookville with a copy of MPI's October 13, 2017 letter indicating the same.

---

[4] The letter indicates a copy was delivered to "STV, Inc." At this time, nothing is known in the record about STV, Inc.

**MEMORANDUM DECISION AND ORDER - 5**

MPI offered to remedy the noncompliance for $694,162.69. Metro-North accepted the offer and in turn did not pay outstanding amounts then due under a separate contract with Brookville totaling $717,833.19.[5]

On July 9, 2019, upon request from Brookville, the Federal Railroad Administration conducted an audit of the fuel tank layout on the Locomotives, and indicated that "FRA technical staff believe the design presented fulfills the intent of the aforementioned requirement," referring to the spill control requirements contained in 49 C.F.R. § 238, App. D, para. C, and the associated referenced standards. On September 10, 2019, Brookville notified Metro-North of the FRA's audit results indicating the Locomotives comply with applicable regulations, are not defective, and therefore do not need to be repaired. On September 16, 2019, Brookville notified MPI of the FRA's audit results, and requested a retraction of MPI's statement to Metro-North that the Locomotives' fuel tanks are "non-compliant" with federal regulations. MPI refused to retract the statement and denied that its October 13, 2017 statement to Metro-North was defamatory.

## ANALYSIS

MPI's motion to dismiss hinges upon what state's substantive law applies to Brookville's five causes of action. The Court is confronted with the following choices: New York, which is where Metro-North conducts its operations; Pennsylvania,

---

[5] It is not clear when these events occurred. According to the Complaint, MPI agreed to have all twelve fuel tanks on the Locomotives replaced by June of 2021. Brookville does not provide further details regarding the contract it references with Metro-North, or when payment was due according to its terms.

Brookville's state of incorporation and the location of its principal place of business; Delaware, which is where MPI is incorporated; and Idaho, MPI's principal place of business.

MPI argues New York substantive law applies to counts one and two, because the defamatory statements were published in New York via the letter sent to Metro-North. Because the statements were published on October 13, 2017, application of New York's one-year statute of limitations would bar counts one and two. N.Y. C.P.L.R. § 215(3) (requiring actions for libel, slander, or false words causing special damages to be commenced within one year).[6]

MPI advocates for application of New York substantive law also to count three, the claim for invasion of privacy/false light, because New York is the location where the invasion of privacy occurred. New York does not recognize the tort of invasion of privacy/false light. Alternatively, if Pennsylvania law applies considering it is Brookville's principal place of business, MPI contends the claim would either be barred because corporations cannot assert such a claim under Pennsylvania law, or because of Pennsylvania's one-year statute of limitations.[7]

---

[6] MPI also raises substantive arguments in support of dismissal under New York law, contending the statements constitute privileged, nonactionable opinion. However, if the Court concludes the statute of limitations bars counts one and two, it needs not reach MPI's alternative arguments.

[7] MPI again raises several substantive arguments in support of dismissal under Pennsylvania law, arguing that the allegations do not satisfy the "publicity" or the "highly offensive" requirement. These arguments need not be addressed if the Court applies either New York or Pennsylvania law, and concludes neither state recognizes a claim for invasion of privacy/false light.

**MEMORANDUM DECISION AND ORDER - 7**

Finally, MPI argues Pennsylvania law applies to counts four and five for tortious interference with contract and prospective economic advantage, because the injury in the form of lost revenue was felt by Brookville in Pennsylvania when Metro-North refused to pay outstanding amounts then due under a separate contract with Brookville. The one-year statute of limitations applicable under Pennsylvania law would bar both claims.[8]

Brookville argues first that a conflicts of law analysis and choice of law determination by the Court would be premature, and should not be undertaken upon a motion to dismiss. Alternatively, Brookville argues Idaho has a greater interest in the outcome of this case, because the tortious conduct emanated from MPI's place of business in Idaho. Brookville asserts the motion must be denied, because Idaho's two-year statute of limitations would apply and all claims in the Complaint would be allowed to proceed. MPI did not assert any alternative arguments under Idaho law in support of its motion to dismiss.

## 1.     Motion to Dismiss Standards

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more

---

[8] Alternatively, MPI asserts substantive arguments in support of dismissal under Pennsylvania law. The Court needs not reach these alternative arguments if Pennsylvania's one-year statute of limitations applies.

**MEMORANDUM DECISION AND ORDER  - 8**

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Factual allegations must be enough "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

Dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009); *Morningstar Holding Corp. v. G2, LLC*, No. CV-10-439-BLW, 2011 WL 864300, at *3 & n. 4 (D. Idaho Mar. 10, 2011). The Court of Appeals for the Ninth Circuit has held that, "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether the plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted).

A claim should only be dismissed under Rule 12(b)(6) on the ground that it is barred by the statute of limitations where "it appears from the face of the complaint itself that the limitation period has run." *Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1014 (D. Idaho 2010) (quoting *Guy v. Swift & Co.*, 612 F.2d 383, 385 (8th Cir. 1980); *see also Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

2.      **Choice of Law**

Brookville argues generally that engaging in a choice of law analysis is premature

and should not be undertaken upon a motion to dismiss. However, the Court does not find

the choice of law analysis premature based solely upon the fact that a motion to dismiss is

under consideration. *See Cornelius*, 709 F. Supp. at 1014 (applying choice of law

analysis in the context of a motion to dismiss); *Allcare Dental Mgmt., LLC v. Zrinyi*, No.

CV-08-407-S-BLW, 2009 WL 262112, at *2 (D. Idaho Feb. 4, 2009) (analyzing choice

of law in the context of a motion to dismiss). The Court finds the facts are sufficiently

alleged in the Complaint to determine the substantive law applicable to the claims raised

and is mindful that it must construe all facts in Brookville's favor. *Pebble Beach Co. v.

Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

A federal district court sitting in diversity must apply the forum state's choice of

law rules to determine the controlling substantive law. *Cornelius*, 709 F. Supp. at 1014

(citing *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005)). Idaho applies the

"most significant relationship" test of the Restatement (Second) Conflict of Laws § 145

to determine the applicable law with respect to an issue in tort. *Cornelius*, 709 F.Supp. 2d

at 1014 (citing *Grover v. Isom*, 53 P.3d 821, 823–24 (Idaho 2002)). The determination of

applicable substantive law should be unique to each count. *Blaine Larsen Processing,

Inc. v. Hapco Farms, Inc.*, No. CIV. 97-00212-E-BLW, 1999 WL 34809531, at *2 (D.

Idaho June 16, 1999).

Section 145 presents the "general rule" that informs all torts, and requires the

Court to determine which state "has the most significant relationship to the occurrence

**MEMORANDUM DECISION AND ORDER  - 10**

and the parties under the principles stated in § 6."[9] Restatement (Second) Conflict of

Laws § 145(1); *Sarver v. Chartier*, 813 F.3d 891, 898 (9th Cir. 2016).

> Contacts to be taken into account in applying the principles of
> § 6…include:
> [1] the place where the injury occurred,
> [2] the place where the conduct causing the injury occurred,
> [3] the domicile, residence, nationality, place of incorporation
> and place of business of the parties, and
> [4] the place where the relationship, if any, between the
> parties is centered.

Restatement (Second) Conflict of Laws § 145(2); *Grover*, 53 P.3d at 824. The most

important factor is where the injury occurred. *Grover*, 53 P.3d at 824.

The Restatement also contains specific provisions applicable to particular torts.

Section 149 applies to defamation cases involving a communication to a third party. In

such cases,

> [T]he local law of the state where the publication occurs
> determines the rights and liabilities of the parties, except as
> stated in § 150, unless, with respect to the particular issue,
> some other state has a more significant relationship under the
> principles stated in § 6 to the occurrence and the parties, in
> which event the local law of the other state will be applied.

Section 150 applies specifically to multistate defamation cases arising "from

defamatory matter in any one edition of a book or newspaper, or any one broadcast over

---

[9] The Section 6 factors include:
    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of other interested states and the relative interests of those states
    in the determination of the particular issue,
    (d) the protection of justified expectations,
    (e) the basic policies underlying the particular field of law,
    (f) certainty, predictability and uniformity of result, and
    (g) ease in the determination and application of the law to be applied.

**MEMORANDUM DECISION AND ORDER  - 11**

radio or television, exhibition of a motion picture, or similar aggregate communication….” In such cases, the rights and liabilities that arise “are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.” If a natural person claims defamation by an aggregate communication, “the state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state.” When a corporation claims defamation by an aggregate communication, “the state of most significant relationship will usually be the state where the corporation, or other legal person, had its principal place of business at the time, if the matter complained of was published in that state.”

Under Section 152, which concerns an action for an invasion of a right of privacy,

> [T]he local law of the state where the invasion occurred determines the rights and liabilities of the parties, except as stated in § 153, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Although Idaho has not adopted the specific restatement sections for analyzing particular torts, *see Blaine Larson*, 1999 WL 34809531, at *2 (evaluating choice of law applicable to defamation claim and other tort claims under Section 145 of the Restatement), MPI urges the Court to apply Sections 149 and 152 to counts one, two, and three, and Section 145 to counts four and five. Brookville advocates for application of Section 150 and 152, as well as Section 145 and the broader principles of Section 6.

**MEMORANDUM DECISION AND ORDER - 12**

Because Idaho has not formally adopted Restatement Sections 149, 150, and 152, the Court will address the parties' arguments under the more specific restatement sections as well as under Section 145.[10]

A.    *Defamation Claims – Counts One and Two*

Counts one and two allege the statement concerning non regulatory compliant fuel tanks in the October 13, 2017 letter from MPI to Metro-North is false, and that Metro-North relied upon the statement when it sought to make a warranty claim with Brookville and purchase new fuel tanks from MPI. In count one, Brookville contends it has been damaged as a result of the statement, and it is entitled to presumed damages as a result of MPI's defamatory *per se* statement. Count two claims actual damages as a result of MPI's false statement, including damage to Brookville's reputation in the locomotive manufacturing industry and with its customer, Metro-North; costs associated with efforts to address MPI's false statement; and interest on Metro-North's account receivable that Metro-North refused to pay as a result of MPI's false statement.

Under Section 149 of the Restatement, the generally accepted premise is that the state where injury was suffered is a more appropriate choice for the substantive law than is the state from which the harm emanated. *Hanley v. Tribune Pub. Co.*, 527 F.2d 68, 70 (9th Cir. 1975). For choice of law determinations when the allegedly defamatory

---

[10] MPI did not address whether Idaho should (or would) adopt the specific restatement sections applicable to particular torts. Brookville responds that, although Idaho has not adopted the specific sections of the Restatement, "it is safe to say it would do so." Pl.'s Opp. at 8. (Dkt. 11) (citing *Off. Spec Sols., LLC v. H.J. Heinze Co., L.P.*, 2007 WL 1193724 at *3 (D. Idaho Mar. 29, 2017)). The Court makes no determination in this regard.

MEMORANDUM DECISION AND ORDER  - 13

statement is not communicated through a mass medium, the locus of the tort of

defamation is the place of publication. *LaMontagne v. Craig*, 817 F.2d 556, 557 (9th Cir.

1987) (citing Restatement (Second) of Choice of Law § 149). Section 149 of the

Restatement explains that the rule "furthers the choice-of-law values of certainty,

predictability and uniformity of result and, since the state where publication occurred will

usually be readily ascertainable, of ease in the determination and application of the

applicable law." Restatement (Second) of Conflict of Laws § 149 Cmt. b.

Section 145, comment e, illustrates that,

> [w]hen a person in state X writes a letter about the plaintiff
> which is received by a person in state Y, the local law of Y,
> the state where the publication occurred, will govern most
> issues involving the tort, unless the contacts which some
> other state has with the occurrence and the parties are
> sufficient to make that other state the state which, with
> respect to the particular issue, has the most significant
> relationship to the occurrence and the parties.

Restatement (Second) of Conflict of Laws § 145 Cmt. e

Brookville fails to explain why the principles enumerated in comment b to Section

149 do not apply in this case or to distinguish the example in Section 145 comment e.

Although the Complaint alleges MPI engaged in conduct beyond simply drafting and

mailing the letter to Metro-North, counts one and two rely solely upon MPI's alleged

defamatory statement in the October 2017 letter to Metro-North that Brookville's

Locomotives were non-compliant with applicable regulations requiring roll-over spill

protection measures for locomotive fuel tanks. Compl. ¶¶ 40, 48. Publication of the

statements occurred in New York on or about October 13, 2017. The Complaint was not

**MEMORANDUM DECISION AND ORDER - 14**

filed until October 4, 2019, far beyond one year after publication. Application of the one-year statute of limitations under N.Y. C.P.L.R. § 215(3) therefore bars counts one and two of the complaint.

Brookville attempts to evade application of New York's statute of limitations by invoking a multistate publication analysis under Section 150 of the Restatement, which provides an exception to Section 149. Restatement (Second) of Conflict of Laws § 149, Cmt. a ("The rule of this Section applies to all publications of defamatory matter except when there is a multistate publication of an aggregate communication within the meaning of the rule of § 150."). Brookville, which is one of ten companies manufacturing locomotives nationwide, alleges it suffered harm to its reputation in the industry as a result of MPI's communications with Brookville's other customers, including Brookville's customer in Florida. Therefore, Brookville argues that publication occurred in multiple states, and thus the place of injury does not play as important of a role in the choice of law analysis. *See Sarver v. Chartier*, 813 F.3d 891, 898-99 (9th Cir. 2016) (holding that the multistate nature of the harm precluded a finding that the place of injury controlled the choice of law analysis). Citing *Sarver* as support, Brookville argues that Idaho, the location where MPI's tortious conduct originated from, is the state with the most significant relationship to the occurrence and the parties.

The Court finds that Brookville's multistate publication argument is flawed for two reasons. First, the allegations in the Complaint do not state a claim for multistate publication of an aggregate communication within the meaning of Section 150. That section defines an aggregate communication as "any one edition of a book or newspaper,

**MEMORANDUM DECISION AND ORDER - 15**

or any one broadcast over radio or television, exhibition of a motion picture…." Restatement (Second) of Conflict of Laws § 150. Neither the letter MPI sent to Metro-North, nor any other discrete communication between MPI and other customers of Brookville, is equivalent to an aggregate communication, which is required to trigger application of Section 150. Brookville appears to conflate publication with reputational injury and does not explain how nationwide harm to reputation from one or more discrete publications is equivalent to an aggregate communication as defined in Section 150.

Second, Brookville's reliance upon *Sarver v. Chartier* is misplaced. Brookville asserts that *Sarver* stands for the proposition that the place where the tortious conduct occurs will always be the deciding factor in all cases involving an allegation of multistate harm. But *Sarver* concerned reputational injury allegedly caused by nationwide publication of a major motion picture, which prompted the court's application of Restatement Section 150. *Sarver*, 813 F.3d at 898. The court declined to apply the general rule of Section 150 that the state with the most significant relationship will be the state of the injured person's domicile at the time of publication. *Id.* Rather, the facts in that case led to the court's conclusion that the place of injury was not as important as other factors in its choice of law analysis, primarily because determining Sarver's domicile, and therefore the place of injury, was not straightforward. *Id.*[11] The court next engaged in a choice of law analysis under Section 145 of the Restatement. *Id.*

---

[11] Sarver was a sergeant in the United States Army and his domicile changed frequently as a result.

**MEMORANDUM DECISION AND ORDER - 16**

In contrast here, Section 150 does not apply. And, while the court in *Sarver*

concluded that the multistate nature of Sarver's alleged harms downplayed the

significance of the place of injury in the choice of law analysis, the court arrived at its

conclusion after engaging in a rigorous analysis under Section 145 of the Restatement. In

other words, *Sarver* does not stand for the proposition that the place where the tortious

conduct occurs will be the deciding factor in a case alleging reputational injury. Rather, if

application of the more specific rule does not end the inquiry, the Court must engage in a

thorough analysis under Section 145. 813 F.3d at 898. *See also Blaine Larsen*

*Processing, Inc. v. Hapco Farms, Inc.*, No. CIV. 97-00212 E BLW, 1999 WL 34809531

(D. Idaho June 16, 1999) (engaging in analysis under Section 145 in case alleging

defamation).

Weighing the four factors in Section 145 of the Restatement, the Court concludes

New York substantive law applies to counts one and two as pled in the Complaint. With

regard to factor three, the domicile/place of business of the parties, the Court has

Brookville, a Pennsylvania corporation with a primary place of business in Brookville,

Pennsylvania; MPI, a Delaware corporation with a primary business location in Idaho;

and publication of statements by MPI to Brookville's customer located in New York. The

third factor does not weigh strongly in favor of any state.

In contrast, the first and fourth factors weigh heavily in favor of application of

New York law. Here, it is not difficult to identify the location of Brookville's alleged

injury. The publication of the letter authored by MPI occurred in New York. Even

acknowledging discussions among MPI employees located in Idaho likely occurred

**MEMORANDUM DECISION AND ORDER  - 17**

before drafting the letter, the tortious publication causing harm to Brookville occurred in New York. Brookville most palpably felt the injury in the form of lost revenue and potential future business from a customer located in New York, and its injury was not limited to reputational injury.[12]

The fourth factor concerns the place where the relationship between the parties is centered. New York is the epicenter of the parties' relationship. Metro-North was a customer of both MPI and Brookville. And Brookville lost revenue from Metro-North as a result of MPI's conduct, while MPI gained Metro-North's business. Brookville and MPI are competitors in the industry, and their dispute primarily concerns which company may benefit in the future from Metro-North's business.

Even assuming nationwide reputational injury such that the place where the conduct causing injury occurred might carry more weight, Brookville has not convinced the Court that Idaho would have a greater interest in applying its law to determining the outcome of this dispute. Brookville contends that Idaho has the most significant relationship because it has an interest in punishing resident tortfeasors. However, the court in *Blaine Larson* rejected the corollary to this argument under similar facts involving reputational harm.

---

[12] The Court's analysis comports also with the example, discussed above, in Comment e to Section 145 of the Restatement, which dictates application of the law of publication when a defamatory letter is mailed from state X to a recipient in state Y. The Court therefore rejects Brookville's argument that it should give more weight to the place where the defendant's conduct occurred, which arises when the place of injury cannot be ascertained or is fortuitous. *See* Restatement (Second) of conflict of Laws § 145 Cmt. e.

**MEMORANDUM DECISION AND ORDER  - 18**

In *Blaine Larson*, the court was presented with a claim that the defendant, located in New York, defamed the plaintiff, an Idaho corporation, with statements published in a complaint filed in New York against a third party. 1999 WL 34809531 at *3. Alleging nationwide harm to reputation, the plaintiff sought to avoid application of New York law and advocated for application of Idaho law, on the grounds Idaho had a greater interest in protecting its citizens from defamation in such a case. The court recognized that the plaintiff alleged injuries on a nationwide basis, including loss of reputation, market share, customers and business relationships. *Id.* Nonetheless, although the court acknowledged Idaho may have an interest in protecting its citizenry by applying its laws to the dispute, the court considered Idaho's interest against the interests of other jurisdictions. *Id.* The court looked to the first two factors—the place where the injury occurred, and the place where the conduct causing the injury occurred—to decide what substantive law should apply, finding the other two factors of Section 145 neutral. *Id.* In other words, because the injury was felt nationwide, the court did <u>not</u> consider Idaho to have a greater interest in applying its laws to protect a business located in Idaho.

In accounting for where the tortious conduct occurred, the Court concluded that, even though the effect of the communication carried beyond New York, "the actual tortious conduct alleged…occurred exclusively in New York. While Idaho has some interest in applying its laws to protect Idaho citizens from defamation, this is matched by New York's interest in applying its law to claims arising out of litigation conducted in its Courts." *Id.* The Court therefore concluded that the most significant relationship test dictated New York law should apply to the defamation claim. *Id.*

**MEMORANDUM DECISION AND ORDER  - 19**

Here, the Court is confronted with a defendant incorporated in Delaware, sending a letter from its Idaho location, to a customer in New York, which in turn is a customer of a Pennsylvania corporation. The Court fails to see how Idaho would have a greater interest in applying its laws to this dispute than any of the other jurisdictions. Applying the corollary to *Blaine Larson*, while Idaho may have some interest in policing the conduct of businesses operating here, this is matched by Pennsylvania's interest in protecting its citizens; and New York's interest in applying its laws to defamatory publications published there, and causing harm to citizens doing business with New York residents.

Brookville makes one additional argument seeking to avoid dismissal of counts one and two. Brookville advocates for time to conduct discovery, because it contends there may be other actionable defamatory statements made by MPI to other customers. Brookville argues that it is unknown who MPI communicated with beyond Metro-North. For instance, Brookville argues that MPI likely had conversations with others in Idaho, and Brookville believes MPI may have disseminated the statement to Brookville's customer in Florida as well as to its other customers. Compl. ¶ 24. In such a case, Brookville argues it is possible the Court could apply the laws of a different jurisdiction to each separate publication, citing Comment a of the Restatement (Second) of Conflict of Laws § 149.

This section explains that:

> [W]ith the exception of a multistate publication of an aggregate communication within the meaning of the rule of § 150…, each communication to a person, other than a

> communication by the defamer to the person defamed, is
> considered a separate publication for choice-of-law purposes.
> It is therefore possible, particularly when the same
> communication is made to different persons in different
> states, that each communication by the defamer will be
> governed by a different law.

Consequently, Brookville argues that it would be premature for the Court to conclude

New York substantive law applies, because there may be other actionable

communications it does not yet know about.

The Court recognizes Brookville alleges additional actionable communications

occurred beyond the publication of MPI's October 13, 2017 letter to Metro-North. The

Complaint mentions MPI's alleged communication with Brookville's customer in

Florida, as well as the possibility of other actionable communications.[13] However, neither

the communication with the Florida customer nor any other communication forms the

stated basis for Brookville's two defamation claims. And, assuming there are additional

actionable communications, each defamatory publication must be analyzed separately.

*Cornelius*, 709 F. Supp. 2d at 1014 (recognizing each published statement deserved

separate consideration under the applicable statute of limitations); Restatement (Second)

of Conflict of Laws § 149, Cmt. a. None of this makes the Court's determination here

premature, because it is limited to consideration of counts one and two as plead in the

Complaint. Should Brookville wish to amend its complaint regarding MPI's alleged

---

[13] For instance, the October 2017 letter was sent to other individuals, as well as to an otherwise
unidentified entity, STV, Inc.

**MEMORANDUM DECISION AND ORDER  - 21**

communication to the South Florida Regional Transit Authority, the Court will allow it.[14] But, the Court needs not defer ruling upon the motion to dismiss to enable Brookville to do so.

Under either Section 149 or the most significant relationship test under Section 145, the Court concludes New York substantive law should apply to counts one and two as they are currently framed in the Complaint. Accordingly, the claims asserted against MPI based upon the publication of the October 13, 2017 letter to Metro-North in New York are barred by New York's one-year statute of limitations.

### B.      Invasion of Privacy/False Light – Count Three

Count three alleges that the statements made in the October 13, 2017 letter MPI sent to Metro-North placed Brookville in a false light in the public eye and, in particular, with its long-time customer, Metro-North. Compl. ¶¶ 54-61. MPI argues that, under either New York or Pennsylvania law, the invasion of privacy/false light claim would fail because neither state recognizes the tort. Brookville advocates for application of Idaho law by application of the most significant relationship test.

Brookville's assertion of a separate claim for invasion of privacy-false light again requires the Court to engage in a choice of law analysis. *Blaine Larsen*, 1999 WL 34809531 *3. Under either Restatement (Second) of Conflict of Laws § 152, which concerns the specific right of privacy, or under Section 145, the Court concludes New York law applies. Section 152 states that, "[i]n an action for an invasion of a right of

---

[14] Under Florida law, claims of defamation are subject to a two-year statute of limitations period. F.S.A. § 95.11(4)(g).

privacy, the local law of the state where the invasion occurred determines the rights and liabilities of the parties….” Restatement (Second) of Conflict of Laws § 152. When an invasion involves the publication of information about the plaintiff, the place of invasion is where the complained-of matter was communicated to a person other than the plaintiff. *Id.*, Cmt. c. Here, the invasion (publication) occurred in New York.

The application of the most significant relationship test yields the same result. According to the Complaint, the October 13, 2017 letter constituted the catalyst for the events that followed and resulted in a negative response by Metro-North, Brookville's long-time, and then current, customer. Thus, while the conduct causing injury occurred in Idaho, New York was the place of publication, and the location where the injury was palpable, and immediate. Metro-North proceeded with the repairs to be performed by MPI, and then refused to pay outstanding amounts then due under a separate contract with Brookville. The relationship of the parties is centered in New York, because Metro-North is both MPI's and Brookville's customer. The Court therefore finds New York is the state with the most significant relationship to the occurrence and to the parties.

Under New York law, false light is a subset of injury for the tort of invasion of privacy. *Matthews v. Malkus*, 377 F. Supp. 2d 350, 358 (S.D.N.Y. 2005). Invasion of privacy based on publicity which places a person in a false light is not a cognizable claim. *Id.* (dismissing alternative claim for false light where the plaintiff alleged the defendant published a defamatory statement). Count three is therefore subject to dismissal as a matter of law.

**MEMORANDUM DECISION AND ORDER - 23**

**C.**     **Interference with Contract and with Prospective Economic
Advantage – Counts Four and Five**

Counts four and five are both interference claims based in tort. Count four outlines

Brookville's longstanding contractual relationship spanning several years with Metro-

North, alleging that MPI intentionally interfered with that relationship by falsely stating

the Locomotives were non-complaint with federal regulations. Count five alleges MPI

intentionally and wrongfully interfered with Brookville's valid economic expectancy

with Metro-North, and with other customers, when it falsely informed Metro-North that

the fuel tanks on the Locomotives did not comply with federal regulations. Brookville

claims MPI did so to improperly disrupt the valuable and long-term customer

relationships Brookville had and its valid economic expectancies associated with its

customers. Brookville claims actual damages.

MPI argues the court should apply Pennsylvania law to the tortious interference

claims set forth in counts four and five, because the financial injury occurred in

Pennsylvania, where Brookville resides. Pennsylvania's statute of limitations applicable

to any claim arising from a defamatory publication is one year. *Evans v. Philadelphia*

*Newspapers, Inc.*, 411 Pa. Super. 244, 249, 601 A.2d 330, 333 (1991) (a plaintiff "should

not be able to circumvent the statute of limitations by merely terming the claim tortious

interference when in essence it is one of defamation, subject to a one year limitation of

action"). Although Brookville does not concede Pennsylvania law applies, it argues that,

if it does, Pennsylvania's two-year statute of limitations period would apply because

MPI's conduct is broader than simple transmission of a defamatory statement.

**MEMORANDUM DECISION AND ORDER  - 24**

The Court declines to conclude Pennsylvania law applies under the facts set forth in the Complaint, and the two claims as plead. Applying the most significant relationship test of Section 145 of the Restatement, and consistent with its findings above, the Court concludes the New York connection predominates. First, the relationship of the parties is centered in New York. Metro-North is Brookville's longstanding customer and MPI's customer. MPI ostensibly increased its profits by informing Metro-North of the suspected issue with the fuel tanks on Brookville's Locomotives. Metro-North then refused to pay Brookville money owed on another contract, which forms a basis for Brookville's damages. Second, even though the statements originated from an Idaho based business (incorporated in Delaware), the statements reached Metro-North, and were published, in New York. The letter served as a catalyst for the resulting injury, which was most immediately felt in New York by the disruption in Brookville's customer relationship with Metro-North. The circumstances described in the Complaint favor application of New York law to the two tortious interference claims.

Neither party briefed the Court on the consequences of applying New York law to the two tortious interference claims.[15] Accordingly, the motion will be denied as to counts four and five.

---

[15] Under New York law, the statute of limitations for the tort of interference with a prospective economic advantage and interference with contract is three years. *Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 670 (S.D.N.Y. 2007). If a claim is based upon the intentional torts of interference with advantageous or contractual relations, but alleges injury to reputation, it is considered a disguised defamation claim and subject to a one-year limitations period under C.P.L.R. § 215(3). *Pasqualini*, 498 F. Supp. 2d at 670. Here, Brookville alleges not just injury to reputation, but actual money damages related to Metro-North's nonpayment on a contract with Brookville to offset its payment to MPI to retro-fit the fuel tanks.

**MEMORANDUM DECISION AND ORDER - 25**

**3.**       **Amendment of the Complaint**

Brookville alleges that defamatory statements were directed also to its customer in Florida. In addition, the October 13, 2017 letter contains a notation that a copy was sent to "M. Sullivan" and "G. Scoullos" at "STV, Inc." There is nothing in the record before the Court that identifies STV, Inc., or the two named individuals. Last, construing the facts in favor of Brookville, it is possible that MPI engaged in further publications of defamatory remarks. Accordingly, while counts one and two as plead are barred by the applicable statute of limitations, consistent with its analysis in Section 2(A), the Court will allow Brookville to amend its complaint and engage in discovery related to other potential claims of defamation.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)   Defendant's Motion to Dismiss (Dkt. 9) is **GRANTED IN PART AND DENIED IN PART**, as follows:

   a.   Counts One and Two alleging defamation based upon the publication of the October 13, 2017 letter to Metro-North are dismissed with prejudice;

   b.   Count Three is dismissed with prejudice; and

   c.   Plaintiff may proceed with Counts Four and Five.

2)   Plaintiff will be allowed to amend its complaint with respect to its defamation claims concerning other statements made by MPI. A deadline for such amendments will be discussed at a scheduling conference to be arranged with the parties. An order is forthcoming.

DATED: April 22, 2020

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER  - 27**